JOSEPH HOPKINS *et al.*, Appellants, *v.* WESLEY McCANN, Adm'r of William Hopkins, deceased, Appellee.

APPEAL FROM ADAMS.

The case of *Stone et al.* v. *Wood*, Adm'r, at page 177 of 16th Illinois Reports, examined and approved.

An administrator only represents and controls personal property. Upon a deficiency of assets to pay the debts of the estate, he may apply, in connection with the heir, for an order to sell realty. The parties in such cases are not in privity, the admissions of an administrator do not bind the heir, and the heir may contest an application for the sale of the realty.

The judgments in the Probate Court, are but *prima facie* evidence of the justice of demands against an estate.

THIS was a petition filed at the November term, 1857, of the Adams Circuit Court, by appellee, as administrator, against appellants, praying an order of said court to sell the real estate, of which said William Hopkins died seized, to pay his debts.

Petition states that said William Hopkins departed this life intestate, on the 13th August, 1840, in the State of Missouri, seized in fee simple of the title to the S. W. qr. of Sec. 35, T. 1 S., R. 7 W., in said Adams county, leaving surviving him these appellants, his children, and only heirs at law, who then and still do reside in Missouri. Petitioner was duly appointed administrator, at the September term, 1856, of the County Court of said Adams county. A claim was allowed at the term, 1857, of the Adams County Court, in favor of E. S. Greene, against said estate, for the sum of $3,127.80, and the estate was declared insolvent, and administrator ordered to petition the court for leave to sell real estate to pay debts, prays the appointment of guardian *ad litem* for infant defendant, and for an order to sell, etc.

Answer of guardian *ad litem*, and other defendants:

Admits that William Hopkins, in 1840, died seized of said premises, leaving appellees his only heirs at law; that petitioner was duly appointed administrator, and that said allowance was made in favor of Greene; the estate declared insolvent; administrator ordered to petition for leave to sell, and that defendants are the only persons interested in the premises, and resists the application, because they say that they never resided in the State of Illinois, and had no notice of the proceedings in the County Court for the allowance of said claim, and were nonresidents at the time; Greene caused a citation to be served on administrator; Greene produced duly certified copies of two judgments rendered against said deceased in his lifetime, in the Court of Common Pleas, of Huntington county, Pa., one for

$681.62, in favor of John Ingham, May 7th, 1840, and the other for one thousand two hundred and some dollars, in favor of S. Stewart & Co., April 20, 1840, both assigned to Greene; administrator defended by attorney, employed at the expense of estate, but the court erroneously overruled the defense and allowed said claims; said intestate was not a resident of the commonwealth of Pennsylvania at the commencement of said suits against him, and no personal notice was given him of the pendency of said suits, nor was he subject to the jurisdiction of said court or the laws of said State; that on the 1st day of January, 1840, he had settled with the plaintiffs in said suits and fully paid them, and they were each indebted to him when suits were commenced, and judgments rendered in their favor; that in July, 1840, said William Hopkins paid said judgments in full to Ingham and Stewart & Co., which payments were sufficiently proved to said County Court by said administrator, but said court thinking the proof insufficient, erroneously allowed said claims and ordered them to be paid.

Petitioner filed the following exceptions to said answers, and moved the court to strike out of said answers parts so excepted to:

1st. Said answers do not show fraud or mistake in the allowance by the court of said claim to Greene against said estate, and they seek to go back of the adjudication in said County Court, and set up by way of a bar to a sale of the land, matter adjudicated and settled in said County Court, the said court then and there having full power and authority to make the said allowance and adjudicate on said claim.

2nd. The allowance by said County Court of said claim against said administrators, is conclusive in this proceeding against the heirs, and cannot be resisted by them in this proceeding unless for fraud or mistake.

The court, SIBLEY, Judge, presiding, sustained these exceptions and ordered the part of the answers so excepted to, to be stricken out, and rendered a decree for the sale of the lands or so much thereof as shall be necessary to pay the debts.

Defendants appealed, and assign the following errors:

1st. The court erred in sustaining petitioner's exceptions to defendants' answers.

2nd. The court erred in decreeing the sale of said land.

3rd. The court should have overruled said exceptions, and permitted defendants to prove their answers.

J. W. SINGLETON, for Appellants.

C. L. HIGBEE and J. W. ALLEN, for Appellee.

Breese, J.   This case is identical in principle with that of *Stone et al.* v. *Wood*, Adm. etc. 16 Ill. R. 177.   And the argument of the appellee was mainly directed against the ruling of the court in that case.   No argument was presented on the behalf of appellants, they relying with apparent confidence upon that decision.

After repeated decisions on the same point by this court, the maxim *stare decisis* should prevail, it being for the best interests of society that there should be some permanency in judicial decisions, so that the law may be known, and when known, pursued and obeyed.   It should be a shield and a guide, and not a snare, for those who may come within its operation.

In a solitary case, and by a divided court, upon a disputed or doubtful point, the maxim should not and does not apply, but courts are left free to revise and reverse a former ruling, if found, on more critical examination and more mature deliberation, to be erroneous.

It is in this spirit we have re-examined and re-considered the case to which reference has been made, (16 Ill. R .177,) and given full regard to the dissenting opinion therein pronounced, and our deliberations lead us to the conclusion to which the majority of the court then arrived.

We see nothing in that opinion at war with any principle of justice or right.   On intestacy the title to real estate is thrown, *eo instanti*, by operation of law, on the heir at law, and no other person is seized thereof for any purpose, or authorized to exercise any act of ownership over it, save in the case of a guardian over the estate of his wards.   The administrator cannot meddle with it; he cannot employ any part of the personal assets, to the payment of taxes, or save them from forfeiture on account of non-payment; he represents and controls only the personal assets.   Such power as he may have over the real estate, only commences when a deficiency of those assets, to pay debts against the intestate, is discovered.   He then becomes not seized or possessed of such estate, but the instrument by which a sale of it can be had on application to the proper court, in which application the heir must be a party.   It may well be asked here, why make the heir a party, if he can make no resistance to the application—if he cannot, when thus summoned into court, defend his rights ?   He is the owner of the land, and has a right to know and be satisfied, why it is about to be taken away from him and sold.

To the proceedings before the Probate Court, by the creditor against the administrator, the heir is not a party.   He is not in a position to resist the claims set up, and by which, if allowed through collusion with an unfaithful administrator, or by the

ignorance of an incompetent court, his whole estate is to be swallowed up.

Well might the law be stigmatized as an instrument of injustice, such results following, if the heir be denied the opportunity which every man has, of a full defense—of the largest opportunity to protect his rights. The law will not deprive a man of one dollar, without a hearing—without a chance to contest the claim. Why then should an heir be deprived of his estate without the same right?

It is said, he is privy to the judgment against the administrator, and therefore bound by it, and that whilst, for some purposes, this court and other courts have held such a judgment as conclusive as one against the intestate himself, it should be so to charge and conclude the heir.

It is true, the heir holds the title subject to the necessities of the administration, but it cannot be said, that being so, there is, necessarily, privity between him and the administrator—there is none in blood, none in deed, none in law, none in estate. The administrator seeks to perform a duty devolving upon him by law, to the debts of the intestate, and to resort to the only fund not exhausted, for that purpose. As well might it be said there is privity between the sheriff, who has an execution against a debtor, and the debtor.

The case in 7 Georgia, 559, was a case where the order to sell the real estate had been obtained, and the heirs, being a party to the proceeding, were bound by it. In this case, the heirs resist the application, and demand proof of the existence of debts legally chargeable against the estate. In that case, it is admitted by the court, what we do suppose has never been seriously questioned, that it was competent for the heir to resist, before the ordinary, the granting the order of sale. It is, in fact, an universal principle, pervading the whole realm of jurisprudence, that no man shall be condemned unheard, or forfeit his property without reasonable means afforded him to assert his rights.

Creditors of an estate have, in the first instance, no fund to look to for the payment of their demands, other than the personal assets. They must be exhausted before recourse can be had to the land, and, when that resort is had, the rights of the heirs are not to be overslaughed by the creditors. They are as much entitled to the protection and the regard of the courts, as the rights of the others.

Suppose, instead of the claims having been proved before the Court of Probate, the administrator had admitted them without proof, and judgment rendered on such admission, could it be contended, that on an application to sell lands to pay such

judgments on these admissions, the heirs should not have the right to demand of the administrator proof of their justice? He surely cannot be bound by such judgments, for he does not claim through the administrator—he claims independent of him, there is no privity between them, and he has a perfect right to demand the reason, and know the facts, through and by which he is to be deprived of his property. We do not think an adjudication can be found, where the heir has been bound by the admission of an administrator. We can find no such case. There are cases where privity was held to exist between an executor and a legatee; but there is none between the heir and an executor or administrator.

We think this court has gone far enough, in holding, as they do, that these judgments in the Probate Court are but *prima facie* evidence of just demands against an estate, but do not conclude the heir. They are open to contest by him, when application is made to the court to take his property with which to satisfy them.

This case, and that in 16 Ill. R., are strong cases to show such should be the rule, to require the administrator, on such applications, when resisted—the heir for the first time having an opportunity to be heard—to make full.proof, and to allow the heir to falsify the account of the administrator.

The demands, in both cases, are stale, on which the heir should be fully heard.

We can find no fault with the decision in 16 Ill. R., and re-affirm it in all its parts.

The judgment of the Circuit Court is reversed, and the cause remanded.

*Judgment reversed.*