Union National Bank of Chicago v. Post.

---

**Union National Bank of Chicago et al. v. Alfred Post, for the use of, etc.**

1. COLLATERAL SECURITIES—*Liability of the Pledgee After He Receives Payment of His Debt.*—Where the pledgee of a promissory note, held as collateral security, receives payment of the same, whether by money or its equivalent in value, he is to be considered in law as holding such collateral, less the amount of the debt for which it was pledged, for the pledgor, and is liable to him in an action to recover the same. He can not be heard to assert as against the pledgor that such collateral was worthless or that it was of any less value than the amount paid to him upon it.

2. PAYMENT—*When the Giving of a Second Note for the Payment of the Same Debt Operates as a Payment of the First.*—Whether the giving of another evidence of an indebtedness in the form of a second

promissory note given for the same debt operates as a payment of the first note depends upon whether it was the agreement of the parties that the first note should be paid by the second.

3. DAMAGES—*In Suits Against the Holder of Collaterals.*—The measure of damages in suits against the holders of collateral securities in case of the loss of such securities to the pledgor by the fault of the pledgee, is the difference between the value of the collateral and the amount due as principal and interest upon the debt for which such collateral is held.

4. · RES ADJUDICATA—*Decisions of the Appellate Court.*—When the Appellate Court has once decided a case and determined the rules governing it, such decision is *res adjudicata* in that case, not only of the trial court but as well of the Appellate Court upon another review of the same case.

5. APPELLATE COURT—*Not a Court of Last Resort.*—The Appellate Court is not the court of last resort in this State, and where a cause, after a determination by it, is taken to the Supreme Court, the decision of that court is conclusive and controlling upon the trial court as well as upon the Appellate Court, and the rules announced in its decision by the Supreme Court can not be avoided as the controlling rules in such cause by subsequent decisions of the Appellate Court in the same cause.

Trover, for the conversion of collateral securities. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the March term, 1900. Affirmed. Opinion filed February 15, 1901. Rehearing denied March 5, 1901.

Statement.—This appeal is from a judgment which has been rendered in a long and stoutly contested litigation. The facts out of which the cause of action of appellee arises have been reviewed in one phase or another three times by this court and once by the Supreme Court, and the various decisions rendered upon such reviews may be found in Kelley v. Post, 37 Ill. App. 396; Union Nat. Bank v. Post, 55 Ill. App. 369, and (upon petition for rehearing) 373; same v. same, 159 Ill. 421; and same v. same, 64· Ill. App. 403. These facts, presenting a very complete history of the litigation, may be gathered by a reference to the reports. To again recite the facts in detail in this opinion would unnecessarily lengthen it and would serve no good purpose; therefore we state only such facts as the jury were warranted in finding from the evidence as the basis of their

verdict sustaining appellee's right to a recovery. There was enough in the evidence to justify the jury in finding that appellant, the bank, received from appellee, Post, a promissory note for $25,000, made by James J. West, by his attorney in fact, payable to order of James E. Munroe and by him indorsed, without recourse, which note was the property of Post and was given by Post to appellant, the bank, to be held as collateral security to a note for $16,000, which evidenced a debt of Post to appellant, the bank; that the Union National Bank transferred the note to appellant Kelley; that afterward, and without the assent of Post, Odell, the president of the bank, acting, as he says, as agent of Kelley, exchanged the West-Munroe note for a note for the principal sum of $25,750, made by the Chicago Times Company, by West, its president, the amount of this note being for the principal and accrued interest on the West-Munroe note, which was surrendered in exchange; that this exchange was made by West and Odell as a payment of the West-Munroe note; that afterward, and without the assent of Post, Odell again exchanged the Times Company note for another note made by James J. West for $25,000; and still again Odell exchanged this latter note without the assent of Post, for the original West-Munroe note; that the proceeds of the original loan made upon the West-Munroe note were received by The Chicago Times Company and that the Times Company note, for $25,750, was executed by West, its president, with authority, and was a valid and enforceable promissory note as against the Times Company; that the Times Company, at the time of the maturity of the note, was solvent, and the note was collectible and worth its face value; that the West note and the West-Munroe note taken by Odell in exchange for the Times Company's note were then wholly worthless by reason of the insolvency of West.

Francis A. Riddle, Esq., is beneficially interested by reason of the fact that, having been a surety upon the Post note for $16,000, and having advanced moneys for Post, he was made assignee of an interest of Post in the collateral

note. This suit was brought by Post, for the use of Riddle, to recover from appellants the value of the collateral note deposited by Post with the bank and paid by West to Odell by the giving of the Times Company's note, less the amount due upon the $16,000 note.

Appellee recovered verdict and judgment, from which judgment this appeal is prosecuted.

HENRY S. ROBBINS, attorney for appellants.

SIMEON P. SHOPE and THOMAS CRATTY, attorneys for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

We are of opinion that upon the facts established by the evidence in this case, appellee was entitled to recover. That where the pledgee of a promissory note, held by him as collateral security, receives payment of the same, he holds it, less the amount of the debt for which it was pledged, for the pledgor, and is liable to such pledgor in an action to recover the same, seems too clear to require a citation of authority. It seems also clear that as affecting the rights of the pledgor, it can not matter what the form of the payment is, whether by money or by another note taken by the pledgee in lieu of money. And it seems likewise clear that where a promissory note so held is in fact paid, whether by money or by the equivalent of money in value, the pledgee who has thus received the payment can not be heard to assert as against the pledgor that the note which was paid was worthless, or that it had any less value than was in fact paid upon it to him.

The evidence shows, by a preponderance thereof, that when Mr. Odell, the president of appellant, the bank, gave up the West-Munroe note and received the Times Company's note in lieu of it, the exchange was made as a payment of the West-Munroe note.

It is true that the giving of another evidence of an indebtedness in the form of a second promissory note for the same debt, does not necessarily operate to extinguish lia-

bility upon the former note given for the same debt. Whether it does so operate depends upon whether it was the agreement of the parties that the first note should be paid by the second. There must be an agreement of the parties that the one note is taken as a payment of the other, and not simply as an additional evidence of indebtedness. Cheltenham Stone Co. v. Gates Company, 124 Ill. 623.

But here the evidence does, in our opinion, establish clearly that the Times Company note was given and received in payment of the West-Munroe note. West testified that it was done by Odell and himself as a payment. Riddle testified that Odell declared in effect that it was a payment. West put the West-Munroe note in with his paid notes. It is a significant fact that Odell, when suggesting the giving of the West note for a return to him of the West-Munroe note, asked West if he had canceled it or marked it paid. It is also significant that in making up the amount of the Times Company note, the interest due upon the West-Munroe note was added to the principal thereof to make up the principal sum of the Times Company's note. The West-Munroe note was surrendered to West—a fact not consistent with the theory that it was to be treated as a subsisting obligation of West. Munroe testified that he stated to Odell that West had told him that the West-Munroe note had been paid, and that he, Munroe, inferred from what Odell told him that West had paid it by giving the Times Company's note for it. It is true that Odell denied that he had said anything to West to the effect that the one note was given in payment of the other. But we are of opinion that all the evidence goes very strongly to establish that as a matter of fact the Times Company's note was taken by Odell in full payment and discharge of the West-Munroe note.

Counsel for appellant contend that in any event the true measure of the damages to be recovered, is the difference between the real value of the collateral thus lost to appellee by fault of the pledgee, and the amount of appellee's debt upon the $16,000 note. The proposition has no force

as weakening the case made by appellee, for the real value of the West-Munroe note can not be held to be any less than the amount which the pledgee received upon it. That it was not paid in money can not affect the liability of the pledgee, who elected to take something other than money in payment. The evidence discloses that in fact Odell did receive full value for the amount due, principal and interest, upon the note—for the Times Company's note was good, and worth its face value.

Upon these facts we are unable to perceive how any question can arise as to the proper measure of appellee's damages. They must of necessity be precisely the difference between the face value of the note, which was paid in full, together with interest, and the amount due as principal and interest upon the $16,000 note.

The evidence establishes, without contradiction, the fact that the Times Company's note was a valid obligation upon that company. West was allowed to testify, without objection, that he executed the note as president of the company, and with authority so to do. It is undisputed that the money borrowed, for which the West-Munroe note and the Times Company's note were given, was appropriated and used by the Times Company.

This case does not fall within the line of decisions in cases where an officer of a corporation executes a written obligation in the name of the corporation for the purpose of paying his individual debt. The fact that upon the books of the Times Company, West appears as credited with the amount of the note, could not affect the force of the note in the hands of Odell, the undisputed evidence being that the Times Company received the money borrowed and that West had authority to execute the note. The party obligated upon commercial paper can not, merely by adopting a system of bookkeeping, avoid the obligation.

There is no merit in the contention that the liability of the Times Company could have been enforced even after Odell had surrendered that company's note. As a matter of fact no one of appellants did enforce it or seek so to do,

and it is not for them to take advantage of the fact, if the fact be conceded that they had it in their power to show that West procured the exchange through fraud.

But it is strenuously contended by counsel for appellants, and this is the chief contention upon their part, that the decision of this court upon a former review, as announced in the opinion in Union Nat. Bank v. Post, 64 Ill. App. 403, is conclusive upon this court in the present review, and determinative of the case. In this behalf it is urged that the facts presented are the same now as upon the former appeal, and that hence the former decision is conclusive. We can not assent to either the proposition of fact or of law. The evidence is certainly not the same. Upon the former appeal this court, reviewing the evidence, held that no understanding or agreement was shown between Odell and West at the time of the exchange of the notes. Upon the second trial in the court below, where this judgment resulted, West testified positively to the agreement, i. e., that the transaction was a payment of the West-Munroe note. This was a material question in the case, if not the decisive question, and there being new and additional evidence thereon, the trial became res nova. Elston v. Kennicott, 52 Ill. 272.

But if it be conceded that the facts now presented are precisely the same as the facts considered upon the former appeal, yet we are of opinion that the decision of this court upon that appeal is not now conclusive in the case. The general rule doubtless is that when this court has once decided and determined the rules governing a given case, such decision is res adjudicata in that case for the controlling, not only of the trial court, but as well of this court, upon another review of the same cause. Ogle v. Turpin, 8 Ill. App. 453; Union Ins. Co. v. Kirchoff, 51. Ill. App. 67; Newberry v. Blatchford, 106 Ill. 584.

But this court is not the court of last resort in this State, and where a cause, after a determination of it by this court, is carried by appeal to the Supreme Court of the State, the decision of that court is conclusive and controlling upon the

trial court and upon this court, and the rules announced in such decision by the Supreme Court can not be avoided as the controlling rules in the cause by any number of subsequent decisions of this court in the same cause.

Applying the rules announced by the Supreme Court in this cause (Post v. Union Nat. Bank, 159 Ill. 421) to the facts disclosed by the evidence, it is, we think, clear that the appellee is entitled to the recovery. In that decision the court said:

"The theory of plaintiff's case is, that by taking the Times Company's note in exchange for the collateral note, payable to plaintiff, the latter note was paid off, and out of the proceeds the $16,000 note was satisfied, leaving a balance in the hands of Kelley, or the bank, which belonged to plaintiff. If there is evidence tending to support that theory we are unable to see upon what just or legal line of reasoning it can be held that he is not entitled to a recovery."

In our opinion there is ample evidence in the record now presented to sustain the recovery upon the theory above indicated, and there is no new element in the case as now presented which can operate against the validity and the justness of appellee's claim.

The second refused instruction was properly refused. It told the jury that the note of the Times Company was invalid. The third instruction was also properly refused. It made the bookkeeping of the Times Company the sole criterion of its president's authority to execute notes for money borrowed for its use.

The fourth instruction refused told the jury in effect that if the Times Company's note was secured by West from Odell through fraud, still the Times Company would have been liable upon the note. It was properly refused. There was no evidence that Odell informed Post or Riddle that the note had been so procured, and that he, Odell, could and would enforce it for the use of appellee. We find nothing in the argument of counsel for appellee upon the trial, complained of now, which constitutes error. The only ground of complaint is that the argument ignored the binding and conclusive effect of a former decision of the

case by this court. As before indicated, the ground of objection was not good in view of the decision of the Supreme Court in the same case.

Finally it is contended that the evidence does not sustain the judgment against both appellant Kelley and appellant the bank. We are unable to assent to this contention. If the transfer to Kelley be treated as a *bona fide* transaction, still he would be answerable to the pledgee for the collateral which he received from the bank; nor could the bank escape its liability because, after transferring the collateral to Kelley, the latter, and not the bank, had collected and withheld the proceeds. Both are liable. It is not argued that if the bank and Kelley are liable, the same liability would not attach to Odell.

We are of opinion that there is no reversible error in the record and that the judgment should be affirmed.